IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BOBBY JIMENEZ, | § | CV. NO. 5:13-CV-876-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SGT. CHRIS TEAGUE, CHIEF LEE | § | |
| MCVAY, HONDO POLICE OFFICER, | § | |
| and MEDINA COUNTY DEPUTY | § | |
| SHERIFF , | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Before the Court is "Plaintiff's Reply to Court Recommendation to Dismiss" (Dkt. # 70), which the Court construes as Plaintiff Bobby Jimenez's ("Jimenez" or "Plaintiff") Objections to Magistrate Judge John W. Primomo's Memorandum and Recommendation (Dkt. # 66).[1]  After reviewing the Objections and the supporting and opposing memoranda, the Court **ADOPTS** the Memorandum and Recommendation (Dkt. # 66).

---

[1] Because Jimenez proceeds pro se, the Court must liberally construe his filings. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Windland v. Quarterman, 578 F.3d 314, 316 (5th Cir. 2009) (noting the "well-established precedent requiring that [the court] construe pro se briefs liberally").

<u>BACKGROUND</u>

On October 14, 2011, Sergeant Chris Teague ("Teague") of the Castroville Police Department stopped Jimenez on suspicion of driving while intoxicated.  ("Am. Compl.," Dkt. # 12 at 4;[2] "Teague Aff.," Dkt. # 57, Ex. 3 ¶ 2.) Although most of the subsequent facts surrounding the encounter are in dispute, the Court relates Jimenez's version of the facts because the Court must take the facts in the light most favorable to the Plaintiffs at the summary judgment stage.  <u>See</u> <u>Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.</u>, 646 F.3d 321, 326 (5th Cir. 2011).

After Teague handcuffed Jimenez and moved Jimenez toward the back door of the police vehicle, Jimenez saw that the vehicle's back seat had been refitted with a dog cage insert, which was used for transport of the K–9 unit.  (Am. Compl. at 4; Teague Aff. ¶ 6.)  Jimenez attests that the cage was approximately three feet long by three feet wide and was covered in dried urine and feces.  (Am. Compl. at 4.)  Although Jimenez asked to be transported in the front seat or in another vehicle, Jimenez attests that Teague threatened to pepper spray Jimenez unless he moved into the cage and Jimenez complied.  (<u>Id.</u> at 5.)

Due to a knee injury that Jimenez sustained as a child, he is unable to

---

[2] The Court notes that Jimenez's complaint is competent summary judgment evidence, since it was submitted as a verified complaint that comports with the requirements of the Federal Rules of Civil Procedure.  <u>See</u> <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994).

bend his knee fully without pain.  (Id.)  Because Jimenez could only sit in the cage by bending his knee in ways that caused him pain, after some time in the cage he was forced to lie down.  (Id.)  He remained in the cage as the car idled for about thirty minutes while awaiting the "wrecker,"[3] experiencing discomfort from "extreme heat" that was radiating from the exhaust beneath the floor.  (Id.)  Teague then drove Jimenez to the hospital for a blood test.  (Id.; Teague Aff. ¶ 9.)  During the drive, Jimenez was unsecured in the cage, causing him to rock back and forth in the animal excrement.  (Am. Compl. at 6.)

After his blood test, Teague and another officer brought Jimenez back to the cage to transport him to the jail.  (Id.)  Jimenez again requested to ride in another police vehicle and Teague again declined the request.  (Id.)  Jimenez resisted reentering the vehicle, and Teague and the other officer shoved him into the cage, banging Jimenez's head on the floor.  (Id.)  In total, Jimenez attests that he spent two hours confined in the excrement-littered cage.  (Id. at 7.)  As a result of the experience, Jimenez attests that he contracted a skin disorder.  (Dkt. # 63 at 5.)

On September 23, 2013, Jimenez filed a complaint against Teague, Castroville Police Chief Lee McVay ("McVay"), the City of Castroville, Medina County Sheriff Randy Brown, an unidentified Medina County Deputy Sheriff, an

---

[3] The Court assumes from the context of the complaint that this refers to the time the officer spent waiting for a truck to tow Jimenez's vehicle.

unidentified City of Hondo Police Officer, and the unidentified City of Hondo Chief of Police.  (Dkt. # 1).  On November 14, 2013, at the direction of the Court, Jimenez filed an amended complaint, which alleged the facts described herein. (Dkts. ## 4, 12.)  Upon refiling, Jimenez named as defendants only Teague, McVay, an unidentified Medina County Deputy Sheriff, and an unidentified City of Hondo Police Officer.  (Dkt. # 12.)  The Court construes this amended filing to have voluntarily dismissed the remaining defendants named in Jimenez's original complaint.

Defendants Teague, McVay, the City of Castroville, and the Castroville Police Department filed the instant Motion for Summary Judgment on June 9, 2014.  (Dkt. # 57.)  In response, Jimenez filed a "Motion to Deny Defendants Motion for Summary Judgment," which the Court construes as Jimenez's Response.  (Dkt. # 63.)

On July 15, 2014, the Magistrate Judge issued a Memorandum and Recommendation, which concluded that the Court should grant the motion as to the claims against McVay, the City of Castroville, and the Castroville Police Department and deny the motion as to the claims against Teague.  ("M&R," Dkt. # 66 at 4–11.)  On August 7, 2014, Jimenez filed his "Reply to Court Recommendation to Dismiss," which the Court construes as Jimenez's objections. ("Obj.," Dkt. # 70.)

## LEGAL STANDARDS

### I.   Review of a Magistrate Judge's Memorandum and Recommendation

Any party may contest the Magistrate Judge's findings by filing written objections within fourteen days of being served with a copy of the Memorandum and Recommendation.  28 U.S.C. § 636(b)(1)(C).  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider.  Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) (quoting Nettles v. Wainwright, 677 F.2d 404, 410 n.8 (5th Cir. 1982), overruled on other grounds by Douglass v. United States Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996)).

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  On the other hand, findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Memorandum and Recommendation is clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.     Motion for Summary Judgment

A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Kevin M. Ehringer

6

Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves

v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However,

"[u]nsubstantiated assertions, improbable inferences, and unsupported speculation

are not sufficient to defeat a motion for summary judgment."  United States v.

Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of

Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

DISCUSSION

In his Memorandum and Recommendation, the Magistrate Judge

concluded that the claims against McVay, the City of Castroville, and the

Castroville Police Department should be dismissed.  (M&R at 4–9.)  However, the

Magistrate Judge also found that a genuine issue of fact remains as to Teague's

liability.  (Id. at 15.)  Jimenez objects to the Magistrate Judge's findings that the

claims against McVay and the City of Castroville are subject to dismissal.  (Obj. at

1.)  Defendants do not oppose the findings.

I.    Claims Against Teague

Because no party objects to the Magistrate Judge's findings regarding

the claims against Teague, the Court reviews the findings only to determine if they

are clearly erroneous or contrary to law.  The Court agrees with the Magistrate

Judge that a genuine issue of material fact remains as to whether Teague

transported Jimenez in a patrol vehicle contaminated with dog feces and urine.  As

7

the Magistrate Judge correctly concluded, a reasonable jury could find that transporting Jimenez in a small, excrement-littered dog cage for ninety minutes "with no compelling urgency and other options available" amounted to punishment in violation of the Fourteenth Amendment.  (M&R at 10.)  The Court also agrees that a finding of qualified immunity would be improper at this stage.  (Id. 10–11.)

The only argument that Defendants set forth supporting the dismissal of the claims against Teague is the argument that Jimenez's claims are barred by the Prison Litigation Reform Act ("PRLA") because Jimenez did not exhaust his claims administratively with the City of Castroville.[4]  (Dkt. # 3–4.)  The Court agrees that Jimenez is not subject to PRLA's exhaustion requirement in this case because that requirement applies only to inmate suits—it does not apply to suits against arresting officers.[5]  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002).  Accordingly, the Court agrees that the claims against Teague remain.

## II.    Claims Against Castroville Police Department

Because no party objects to the Magistrate Judge's findings regarding the claims against the Castroville Police Department, the Court reviews the findings only to determine if they are clearly erroneous or contrary to law.  The

---

[4] This argument was not limited to the claims against Teague; it was presented as a general basis for dismissal of all claims against Defendants.

[5] Accordingly, the Court agrees with the Magistrate Judge that the exhaustion argument cannot serve as a basis of dismissal for any of the other defendants, either.

Court agrees with the Magistrate Judge that, although it is unclear how the Castroville Police Department became a party to the litigation, it is nevertheless an improper defendant because it is a department of a municipality that has not been granted capacity to sue and be sued.  See Darby v. Pasadena Police Dep't, 939 F.2d 311, 313 (5th Cir. 1991).  Since the City of Castroville is already a defendant in the case, the Court cannot construe the claim as one against the city.  Therefore, the Court agrees that dismissal of any claims against the Castroville Police Department is proper.

III.    Claims Against City of Castroville and McVay

Because Jimenez objects to the Magistrate Judge's findings regarding the claims against McVay and the City of Castroville, the Court reviews the findings de novo.  The Court addresses Jimenez's specific objections to the findings in Section IV, infra.

A.    Claims Against City of Castroville

In their Motion for Summary Judgment, Defendants argue that the claims against the City of Castroville[6] must be dismissed because there are no policies, practices, or customs in the City of Castroville that would permit a police

_____

[6] Because the City of Castroville is not named separately as a defendant in the amended complaint, the parties presumably assume that the claims against McVay have been brought in both his official and individual capacities.  A suit against a municipality's policymaker in his official capacity is effectively a suit against the municipality.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

officer to transport an arrestee in a police car soiled with dog feces and urine, and the City never granted any of its officers, officials, or employees discretion in deciding whether to engage in that conduct.  (Dkt. # 57 at 6.)

Under § 1983, a municipality is liable for constitutional violations arising out of policies or practices officially adopted and promulgated by the government's officers.  City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988); Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694 (1978). Because a muncipality cannot incur § 1983 liability under a respondeat superior theory, it can only be liable "for acts directly attributable . . . 'through some official action or imprimatur.'"  Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847–48 (5th Cir. 2009) (quoting Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001)).

To establish municipal liability under § 1983, a plaintiff must prove that (1) a policy maker promulgated (2) an official policy or custom that (3) was the moving force behind the violation of the plaintiff's constitutional rights.  Monell, 436 U.S. at 694; accord Zarnow v. City of Witchita Falls, Tex., 614 F.3d 161, 166 (5th Cir. 2010).

1.    Policy Maker

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional

violation acted on behalf of the municipality." Zarnow, 614 F.3d at 167.  "A municipal policymaker is someone who has 'the responsibility for making law or setting policy in any given area of a local government's business.'" Valle v. City of Hous., 613 F.3d 536, 542 (5th Cir. 2010) (quoting Praprotnik, 485 U.S. 112, 125 (1988)).  Whether an official has policy making authority is a question of state or local law.  Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 737 (1989).  "A city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role." Zarnow, 614 F.3d at 167 (internal quotation marks omitted).

The City of Castroville is a Type A general-law municipality, whose governing body is the Mayor and the City Council.  ("Howe Decl.," Dkt. # 51, Ex. 1 ¶ 3.)  Tex. Loc. Gov't Code §§ 6.001, 23.031(b).  Accordingly, the Mayor and City Council are the final policymakers for the City of Castroville.  Although Jimenez contends that McVay is a policymaker for the police department, his argument is unsupported by the evidence.  There is no evidence that the City of Castroville has expressly or implicitly granted McVay final policymaking authority.  Accordingly, for municipal liability to attach to a policy or practice of the City of Castroville, that policy or practice must have been promulgated by the City's Mayor or City Council.

11

2.    <u>Official Policy or Custom</u>

An official policy or custom is either (1) a written policy statement, ordinance, or regulation officially promulgated by county officials, or (2) a widespread practice of municipal officials or employees that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." <u>Peterson</u>, 588 F.3d at 847 (quoting <u>Piotrowski</u>, 237 F.3d at 578). A plaintiff can demonstrate a custom in one of two ways. First, a plaintiff can show a pattern of unconstitutional conduct on the part of municipal actors or employees who are not policymakers. <u>Zarnow</u>, 614 F.3d at 169. Alternatively, a plaintiff can show that a final policymaker took a single, unconstitutional action. <u>Id.</u>

Here, Jimenez has been unable to furnish any evidence of a written policy statement permitting Castroville police officers to transport arrestees or prisoners in excrement-littered K–9 unit cages. Nor has he presented any evidence showing a pattern of similar events sufficient to demonstrate a widespread practice or showing that a final policymaker[7] approved such a measure. Accordingly, Jimenez has failed to meet his burden, and summary judgment in favor of the City of Castroville is warranted.

---

[7] The City of Castroville attests that it "did not grant any of its officers, officials or employees discretion in deciding whether or not to engage in the conduct the subject [of] Mr. Jimenez'[s] complaint." (Howe Decl. ¶ 5.)

12

B.      Claims Against McVay

In their Motion for Summary Judgment, Defendants argue that the claims against the McVay must be dismissed because McVay had no personal participation in the transport and he never authorized a policy permitting the transportation of prisoners in police vehicles soiled with dog feces or urine.  (Dkt. # 57 at 6.)

Because "Section 1983 offers no respondeat superior liability," supervisory officials are not vicariously liable for the actions of their subordinates.   Pineda, 291 F.3d 325, 328 (5th Cir. 2002); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).  However, a supervisor can be liable under § 1983 even if he is not personally involved in the events giving rise to the constitutional violation when he nevertheless (1) fails to adequately train or supervise the officers involved in the constitutional deprivation or fails to promulgate policy, and that failure gave rise to the deprivation, or (2) "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011); Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 459 (5th Cir. 2001); Thompkins, 828 F.2d at 304 (internal quotation marks omitted).

"In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor

13

act[ed], or fail[ed] to act, with <u>deliberate indifference</u> to violations of others'
constitutional rights committed by their subordinates."  <u>Gates v. Tex. Dep't of
Prot. & Reg. Servs.</u>, 537 F.3d 404, 435 (5th Cir. 2008) (internal quotation marks
and citations omitted, alterations and emphasis in original).

   Jimenez has presented no evidence to show that McVay was
personally involved in the incident or that he implemented a policy permitting
officers to transport prisoners or arrestees in K–9 unit vehicles contaminated with
animal excrement.  Since it is the plaintiff's burden to rebut evidence proffered by
the defendant to create a material issue of genuine fact, Jimenez has not met his
burden.

   In his objections, Jimenez suggests that the policy permitting police
officers to transport arrestees and prisoners in the K–9 cages—regardless of their
sanitary condition—"opened the possibility for a lot [of] things to go wrong."[8]
(Obj. at 7.)  Even if Jimenez is correct that McVay's failure to promulgate polices
preventing officers from using K–9 unit vehicles to transport prisoners—or even
that McVay expressly promulgated a policy permitting it[9]—is a basis for liability,

---

[8] The Court notes that Teague's declaration states that "other prisoners had been
transported in that patrol car without any complaints or incidents."  (Teague Decl.
¶ 8.)

[9] Jimenez has presented interrogatory responses from Defendants that suggest that
the person who approved the act of transporting a detainee in a K–9 cage was
McVay.  (Obj., Ex. L.)

he does not meet his evidentiary burden in showing that the failure was exercised with deliberate indifference to Jimenez's injury. According to McVay, he "discontinued the K–9 program many months before [Jimenez's] arrest." ("McVay Decl.," Dkt. # 57, Ex. 2 ¶ 4.) Additionally, McVay attests that "[a]ll Castroville police department vehicles were routinely maintained and cleaned." (Id. ¶ 5.) It would not have been known or obvious to him that a policy permitting transport in vehicles no longer used for housing dogs would give rise to transport in excrement-littered vehicles.[10] Since Jimenez does not provide any evidence suggesting that McVay should have been on notice that the transport vehicles used to move arrestees and prisoners contained dried feces or urine, the record is insufficient to show that the policy was adopted with deliberate indifference to Jimenez's injury.

## IV.   Objections

Jimenez objects on various grounds, namely that: (1) the K–9 program was not actually suspended at the time of Jimenez's arrest; (2) McVay should be subject to supervisory liability for setting in motion a policy that gave rise to the

---

[10] The Court reiterates the Magistrate Judge's apt observation: "The issue in this case is Jimenez's transportation in a dog cage contaminated with dried urine and feces, not whether Jimenez's transportation in a dog cage violated his constitutional rights. A lawsuit by a prisoner involving the latter issue may not be far away. Chief McVay acknowledges that he discontinued the K–9 program many months before Jimenez's arrest. He, and perhaps the City of Castroville, may very well be required to answer for their continued transportation of human beings in animal cages." (M&R at 8 n.2 (citations omitted).)

constitutional violations and because he should have stopped the program upon reading Jimenez's complaint; and (3) the City should be liable for failing to make policy and for giving McVay discretion to create policy.  (See generally Obj.)  The Court addresses each argument in turn.

A.    Whether K–9 Unit Was Suspended

Jimenez first contends that the evidence establishes that the K–9 program was not actually suspended at the time of his arrest.  His primary evidence is the statement from Howe's declaration that "there are no policies, practices, or customs in the City of Castroville that would have allowed a police officer of the City of Castroville to transport a prisoner in a police car soiled with dog feces and urine under unsanitary conditions as described by Mr. Jimenez in his complaint." (Obj. at 3 (citing Howe Decl.).)  This statement does not "clearly state[] the K–9 program was active on 10-14-11," as Jimenez suggests.  (See id.)  Although the Court must make every reasonable inference in favor of Jimenez, there is no reasonable interpretation of the statement that could give rise to the inference argued by Jimenez.

In addition, Jimenez points to various inconsistencies in testimony establishing when the K–9 program was discontinued.  As Jimenez rightly highlights, Teague attests that the program was discontinued approximately a year before Jimenez's arrest; McVay attests that the program was discontinued "many

16

months" before Jimenez's arrest; and a memo from Teague shows that the K–9 program was still operational on January 29, 2011, eight and a half months before Jimenez's arrest.  (Teague Decl. ¶ 7; McVay Decl. ¶ 4; Obj., Ex. A.)  Despite these mild inconsistencies, the statements do not create a genuine issue of material fact that the program was still operational at the time of Jimenez's arrest.

   Finally, Jimenez points to various statements that do not say the program was discontinued.  For example, Jimenez points to a document that appears to be production from Defendants, which lists potential witnesses and states, "At the time of the arrest, the police department had no dog working in the police department."  (Obj., Ex. F.)  While the evidence does not conclusively establish the date the program was terminated, it does not raise a question of material fact as to whether the program was terminated at all.  Because Jimenez has not created a genuine issue of material fact on the issue, the Court must assume for summary judgment purposes that the K–9 program was discontinued at the time of Jimenez's arrest.

   B. <u>Whether McVay Should Be Subject to Supervisory Liability</u>

   Next, Jimenez contends that McVay should be liable under a supervisory liability theory for (1) setting in motion a policy that gave rise to the constitutional violations and (2) failing to stop the program upon reading Jimenez's complaint.  While Jimenez correctly identifies that supervisory liability can be

imposed when a supervisor's failure to train or promulgate policy sets in motion events that give rise to constitutional deprivations, he is incorrect that liability is appropriate in this case. As discussed earlier, a critical component of supervisory liability is that the defendant acted with deliberate indifference to the constitutional violation that occurred. There is no evidence here that McVay acted with deliberate indifference to the constitutional violation that Jimenez suffered—transport in an excrement-littered cage, which resulted in a skin disorder.

Jimenez is correct that, upon reading Jimenez's complaint, McVay was put on notice of the constitutional injury the policy had imposed. Perhaps, if another plaintiff were to bring suit against McVay for similar violations, Jimene''s complaint would cure the deliberate indifference problem that plagues Jimenez's claims. However, Jimenez cannot litigate for unnamed plaintiffs in the future; he only has standing to sue for the injuries that he sustained. By the time McVay read Jimenez's complaint, Jimenez's injuries had already occurred. Accordingly, any notice that Jimenez's complaint provided does not affect the deliberate indifference calculus in Jimenez's case. In short, the supervisory liability claim cannot stand.

C.   Whether the City of Castroville Should be Subject to Municipal Liability

Finally, Jimenez contends that the City should be subject to municipal liability for (1) failing to make policy and (2) giving McVay discretion to create policy. A municipality can be liable for a failure to make policy when "the need to

18

take some action to control the agents of the local governmental entity 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Burge v. Parish of St. Tammany, 187 F.3d 452, 471 (5th Cir. 1999); accord Brumfield v. Hollins, 551 F.3d 322, 332 (5th Cir. 2008).  A common example is a circumstance in which a police department has failed to implement any use of force training for police officers, since it is obvious that police officers would encounter force situations and that a lack of training would result in a constitutional violation.  See City of Canton v. Harris, 489 U.S. 378, 391 n.10 (1989).

        Essentially, Jimenez argues that the City should have implemented a policy that the police department could not transport arrestees or detainees in excrement-littered K–9 dog cages.  The need to create such a policy is far from obvious, and there is no indication that the City had any reason to know that promulgation of such a policy was necessary to avoid constitutional injury in the City.  The Court doubts whether any city in the country has such a policy, but would guess that events like the one Jimenez attests to happen rarely, if at all. Quite simply, the risk is not so obvious nor the policy so inadequate that its absence made the violation of constitutional rights that Jimenez describes likely. Accordingly, municipal liability on a failure to implement policy theory is

inappropriate in this case.

Nor can the City be held liable for giving discretion to McVay.  The Supreme Court is clear that whether an individual is a final policymaker whose acts can impose municipal liability is a question of state law.  "If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability."  Bolton v. City of Dall., 541 F.3d 545, 549 (5th Cir. 2008) (internal quotation marks omitted).  To hold otherwise would "permit policy or custom to be attributed to the city itself by attribution to any and all officers endowed with final or supervisory power or authority."  Id. (internal quotation marks omitted).  Accordingly, "[t]he fact that a municipal employee exercises discretion in making decisions is not enough to establish policymaking authority."  Flores v. Cameron Cnty., Tex., 92 F.3d 258, 269 (5th Cir. 1996)

As discussed above, there is no evidence establishing that McVay was a final policymaker, as defined by state law.  Nor is there any evidence that McVay was delegated final policymaking authority.  "[A]t most, th[e] evidence supports the impermissible conclusion that [McVay] was a 'de facto' policymaker for the [City]."  See Flores v, 92 F.3d at 270 (finding that, even where the Juvenile Board's chairperson testified that he delegated virtually everything related to the detention center to the supervisor of the detention center, there was no evidence that the Juvenile Board itself delegated final policymaking authority to him).  This

is not enough.  Accordingly, the City cannot be liable for any decisions made by McVay.

CONCLUSION

For the aforementioned reasons, the Court **ADOPTS** the Magistrate Judge's Memorandum and Recommendation (Dkt. # 66).  Accordingly, the Court **GRANTS** Defendants' Motion for Summary as pertaining to the claims against the City of Castroville, McVay, and the Castroville Police Department, and otherwise **DENIES** the motion (Dkt. # 70).  All claims against the City of Castroville, McVay, and the Castroville Police Department are hereby **DISMISSED**.

Finally, the Court agrees that the claims against the unidentified Medina County Deputy Sheriff and unidentified City of Hondo Police Officer should be **DIMISSED** as barred by the two-year statute of limitations set forth in § 16.003(a) of the Texas Civil Practice and Remedies Code.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, January 8, 2015.

_____
David Alan Ezra
Senior United States Distict Judge